**Gus O. HOLLIS, Maxine Hollis, and Jean Walsh Quinnett, Plaintiffs-Appellants,**

v.

**The UNITED STATES of America, Defendant-Appellee,**

**Independent Petroleum Association of America, et al., Amici Curiae.**

No. 82–1780.

United States Court of Appeals, Tenth Circuit.

Oct. 3, 1984.

Dan M. Peterson, Gulf & Great Plains Legal Foundation, Kansas City, Mo. (David Crump, Professor of Law, South Texas Law School, Houston, Tex., Wilkes C. Robinson, Barbara Luann Ridgeway and James W. Jeans, Gulf & Great Plains Legal Foundation of America, Kansas City, Mo., with him on the brief, Gerald R. Treece, Professor of Law, South Texas Law School, Houston, Tex., of counsel), for plaintiffs-appellants.

John F. Murray, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Ann Belanger Durney and Daniel F. Ross, Attys., Tax Division, Dept. of Justice, Washington, D.C., with him on the brief, William S. Price, U.S. Atty., Oklahoma City, Okl., of counsel), for defendant-appellee.

Harold B. Scoggins, Jr., Independent Petroleum Ass'n of America, Washington, D.C.; William H. Brown, Michael J. Sullivan of Brown, Drew, Apostolos, Massey & Sullivan, Casper, Wyo., William H. Mellor III, Gale A. Norton, Mountain States Legal Foundation, Denver, Colo., David Kennedy of Kennedy & Connor, Sheridan, Wyo., Gene W. Lafitte, L. Linton Morgan, George J. Domas, Deborah Bahn Price, Joe B. Norman, Anne E. Tate of Liskow & Lewis, New Orleans, La., Mark White, Atty. Gen., State of Texas, John W. Fainter, Jr., Richard E. Gray, III, Stuart Fryer, Asst. Attys. Gen., Austin, Tex., Stephen F. Williams, Robert Nagel, Professors of Law, University of Colorado School of Law, Boulder, Colo., filed a brief on behalf of amici curiae.

Before SETH, DOYLE and LOGAN, Circuit Judges.

SETH, Chief Judge.

This was an action for a refund of taxes paid under the Crude Oil Windfall Profit Tax Act, Pub.L. No. 96–223. It was brought by two taxpayers asserting that the Act was unconstitutional. In their complaint they make only several conclusory statements—thus the provisions of the Act generally are not definite enough "to satisfy due process and, thus, are in violation of Amendment XIV, Section 1 of the Constitution of the United States," and also that the tax is unequal in application in violation of the Fourteenth Amendment. The final paragraph of the "claim" states that the trouble entailed to interpret the Act and to compute the tax constitutes a "violation of Amendment XIII ... and Amendment XIV."

The Government filed a motion to dismiss the complaint for failure to state a claim. A hearing on the motion to dismiss and other motions was held with a full discussion on the record as to what was needed for the complaint to state a claim and wherein the original complaint was de-

ficient. The court at this hearing detailed why the complaint was insufficient. This related particularly to its failure to state in any way how the conclusionary statements as to unconstitutionality were directed to particular provisions of the Act, and what requirements in the Act pertained to the plaintiffs or to their claim for refund. The transcript of this hearing shows that the plaintiffs' attorney, Professor Jeans, who argued the matter, was made aware of what new allegations would be necessary and the Fourteenth Amendment problem. The Government attorney participated and made suggestions. Professor Jeans argued the involuntary servitude theory at some length at that time.

The trial court directed that an amended complaint be filed in 30 days. No request was made for more time. The court also said at the hearing that there would be discovery after the new complaint was filed and the issues further refined.

The necessity to change the complaint was thus made apparent, and the allegations which should be included in a new complaint with reference to provisions of the Act and the issues were also made clear by the judge.

The 30-day period allowed for filing the amended complaint expired on May 24 and there was no filing. There was also no request at any time by plaintiffs for an extension of time or any communication with the court. On June 2 the court *sua sponte* dismissed the original complaint for failure to state a claim and for failure to file an amended complaint "as ordered by the Court."

The original complaint did not state a claim as it contained nothing but generalities and conclusions with no reference to the particular position or acts of plaintiffs and without an indication of what portion of the Act was attacked or involved. The references to the Fourteenth Amendment did not help. The Thirteenth Amendment point had been held not applicable in several cases and does not present an issue. *See Porth v. Brodrick*, 214 F.2d 925 (10th Cir.);

*United States v. Karsky*, 610 F.2d 548 (8th Cir.).

Dismissals for failure to follow the orders of the court are often the consequence of extended or repeated failure by litigants to adhere to ongoing orders of the court. Many of these repeated failures to act by parties relate to discovery matters, to briefs or memoranda.

Nothing having happened, the court, as mentioned, entered an order dismissing the complaint. The plaintiffs moved for a reconsideration of the dismissal. This was denied. In that motion the plaintiffs state that on the last day (May 24) they agreed with the Government attorney that the time would be extended. No reason is given why time was needed, and in any event, it was ineffective.

The Government does not assert that it was prejudiced by plaintiffs' failure to file an amended complaint. The case had been pending about four or five months but as yet there was no complaint.

Dismissal is, of course, drastic. *Davis v. Operation Amigo, Inc.*, 378 F.2d 101 (10th Cir.); *Meeker v. Rizley*, 324 F.2d 269 (10th Cir.). However, in the absence of a reason to the contrary it is not extreme. A long history of challenges to the court's orders or to standing rules should not be and is not a necessary basis for dismissal. With the pressing need for the trial courts to manage their dockets in response to the flood of litigation, when the directions are clear, the action obvious and wholly within the control of the party, there is no reason to expect that the rules or orders should not be followed. The time and need for strict adherence has certainly arrived, the courts have inherent authority to impose sanctions and are not dependent on the rules to do so. Several different kinds of sanctions are available.

The plaintiffs urge that the case concerned a complex subject. We must agree but their analysis of the tax law must have started before the motion hearing. The plaintiffs, according to the briefs and according to the transmittal of supplemental authority, were represented by a very large

legal foundation. There are listed (besides the President who signed the complaint) twenty-five directors. The foundation had offices in Kansas City and Houston. There was also local counsel. We mention this only for the reason that these are not *pro se* plaintiffs nor are they represented by inexperienced attorneys.

The trial court had a right to expect and insist that the directions would be followed; or if they could not, that some application for relief would be made.

There is no basis for an argument that a party must request sanctions before they may be imposed, as plaintiffs argue.

The starting point for our consideration of the sanction here imposed is *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734, wherein the Court indicates the extent of the client's responsibility in the selection of an attorney. The case also establishes the abuse of discretion standard in cases such as this. *Link* was considered in *Jackson v. Washington Monthly Co.*, 569 F.2d 119 (D.C. Cir.). There the court said:

"When the client has not personally misbehaved and his opponent in the litigation has not been harmed, the interests of justice are better served by an exercise of discretion in favor of appropriate action against the lawyer as the medium for vindication of the judicial process and protection of the citizenry from future imposition."

The Supreme Court in *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207, and in *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 1099, has considered two divergent situations in the application of the rule. *See also Boughner v. Secretary*, 572 F.2d 976 (3d Cir.).

The motion of plaintiffs to set aside the default does not indicate which of the reasons described in Rule 60(b) is considered to be applicable. Again, we are left without a particular reason for relief.

However, in view of the impact of dismissal on the litigants in the absence of any prejudice or serious inconvenience to the defendant, and considering the comparatively short time the suit was pending, we must conclude that dismissal as a sanction was too severe and was an abuse of discretion. *In re Four Seasons Securities Law Litigation*, 493 F.2d 1288 (10th Cir.); *Davis v. Operation Amigo, Inc.*, 378 F.2d 101 (10th Cir.). Were it not for the combination of these factors we would have no hesitation in affirming the dismissal. It is, however, evident that some sanction was in order. It appears to us that a substantial monetary sanction against the attorneys for plaintiffs should be considered by the trial court on remand.

We have recently issued significant in banc opinions in *In the Matter of the Sanction of Jay Baker and Michael Carson*, 744 F.2d 1438, and in *D & H Marketers, Inc. v. Freedom Oil & Gas*, 744 F.2d 1443, which should be considered.

The judgment is set aside and the case is reversed and remanded for further proceedings.