**Carl E. BILLS, in his capacity as Personal Representative of the estate of A. LaRue Lamb, Plaintiff–Appellant,**

v.

**The UNITED STATES of America Defendant–Appellee.**

**No. 85–2536.**

United States Court of Appeals, Tenth Circuit.

Sept. 29, 1988.

Robert D. Barclay, Ogden, Utah, for plaintiff-appellant.

Brent D. Ward and Kathleen B. Barrett, Salt Lake City, Utah, for defendant-appellee.

Before HOLLOWAY, Chief Judge, BARRETT, Senior Circuit Judge, and DUMBAULD *, Senior District Judge.

DUMBAULD, Senior District Judge.

This is a suit brought under the Federal Tort Claims Act, 28 U.S.C. 1346(b)[1] by the personal representative of Mrs. A. La Rue Lamb, upon whom a waitress at the N.C.O. Club at Hill Airforce Base, Utah, on September 23, 1979, spilled hot coffee and water or tea. Mrs. Lamb suffered and was treated for first and second degree burns. She had been scheduled for an exploratory operation for cancer on the following day. She was treated for burns and cancer

---

* The Honorable Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation.

**1.** That section, in pertinent part, gives District Courts "exclusive jurisdiction of civil actions on claims against the United States, for money damages.... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Accordingly, in the case at bar Utah law is applicable.

simultaneously. The Complaint alleges that the burns aggravated the cancer. The Complaint claims general and special damages of $70,000; medical expenses of $4,000.00, and loss of wages amounting to $2926.56. Plaintiff (appellant) admits that the decedent died of cancer on January 27, 1982, and thus "died as a result of some cause other than the injury received as a result of the alleged wrongful act of negligence of the United States of America claimed in the plaintiff's complaint." Plaintiff Bills, the personal representative (he being one of Lamb's six next of kin for whose benefit the action was brought) moved permanently to Arizona without communicating with counsel. Plaintiff did not appear at a status conference set for August 6, 1985, at which Bills had been ordered specifically to be present in person. The District Court by order dated August 8, 1985 dismissed the action for lack of prosecution. We affirm.

Dismissal for failure to prosecute is a recognized standard operating procedure in order to clear the deadwood from courts' calendars where there has been prolonged and unexcused delay. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962). The standard of review is abuse of discretion. *Id.* at 633, 82 S.Ct. at 1390; *Holloway v. U.S.*, 734 F.2d 506, 508 (10th Cir.1984); *Gates v. U.S.*, 752 F.2d 516, 517 (10th Cir. 1985). We find no abuse of discretion in the case at bar. Lack of diligence on the part of appellant Bills is manifest. There was lack of communication with counsel to the extent that he was not even informed of the outcome of a previous appeal to this Court, or of an order requiring him to appear in person at a status conference. Some delays in the course of proceedings were for the convenience of the Court and counsel on both sides, but lack of interest on the part of Bills was manifest. The course of events is described as follows in Appellant's Brief, pp. 3–4:

> The order granting the partial summary judgment was appealed to the United States Court of Appeals for the Tenth Circuit on August 22, 1984, Case No. 84–2193. On February 28, 1985, the appeal was dismissed for the reason that the order upon which the appeal was based was not a final judgment, i.e. a final judgment had not been entered by the district court on the merits of Mrs. Lamb's estate's claim. The Mandate directed to the district court was filed March 4, 1985.
>
> The district court then gave the parties Notice of Status Report for June 3, 1985. Carl E. Bills had worked out of state for extended periods of time and the lack of direct contact from him to his counsel between March 1985 and July 1985 was not deemed unusual. The status report was continued several times to accommodate the court as well as both counsel and was conducted on July 2, 1985. Unbeknown to his counsel, Mr. Bills had moved in early 1985 and had not received his counsel's notice concerning the disposition of the appeal and the scheduled status report hearing. On July 2, 1985, the district court directed that the United States of America move for an order requiring Mr. Bills to appear personally on August 6, 1985 and that the order be served by return receipt requested. The motion was made July 25, 1985.
>
> Following the July 2, 1985 hearing, counsel for Mr. Bills attempted to locate him, but was only able to find a recorded warranty deed, dated March 1, 1985, conveying his home in Ogden, Utah. Efforts to locate other children of A. LaRue Lamb were also unsuccessful. Just prior to August 6, 1985, Mr. Bills was located in Arizona. In a telephone conversation he advised his counsel, among other things, that his move was permanent, he could not be in Utah on August 6th but could at a later date, he would consent that another person be appointed substitute Personal Representative for the estate. The order requiring his appearance was never served upon him. On August 6, 1985, the district court was advised of Mr. Bills circumstances. Several alternatives for scheduling the case were suggested, in particular, that the case be set for trial. Without motion being filed by the United States of America, and with-

out making any specific findings, the district court merely dismissed the case for lack of prosecution.

The federal Tort Claims Act gives jurisdiction only for "death caused by the negligent or wrongful act or omission" of a government employee. If Mrs. Lamb's death was not caused by such negligence attributable to the government, there is no liability. It would be manifestly unjust and unfair to expect the government to pay wrongful death damages when the death resulted from other causes, for which the government was not responsible.

Thus it would seem clear that plaintiff stipulated his case away by conceding, in his answer to defendant's request for admissions, that Mrs. Lamb "died as a result of some cause other than the injury received as a result of the alleged wrongful act or negligence of the United States of America claimed in the plaintiff's complaint." [2]

Therefore, since on the merits appellant's case seems *prima facie* weak, there seems little reason for attempting to find abuse of discretion in order to excuse his lack of diligence in pursuing his claims in the case at bar. His federal claim (of unequal protection) seems quite unconvincing. He contends that it is an unreasonable classification for Utah to distinguish between liability for death caused by defendant's wrong and for death *not* caused by defendants' wrong. (Appellant's brief, pp. 22–23).

The complex and difficult questions relating to Utah law [3] should therefore be left to the courts of Utah to disentangle in due course. We need not decide them, and discuss them merely for the sake of clarity as to the nature of the case at bar.

The Utah statute giving rise to this litigation, as amended in 1977, reads as follows:

Causes of action arising out of physical injury to the person or death, caused by the wrongful act or negligence of another, shall not abate upon the death of the wrongdoer or the injured person, and the injured person or the personal representatives or heirs of one meeting death, as above stated, shall have a cause of action against the wrongdoer or the personal representatives of the wrongdoer for special and general damages. However, if prior to judgment or settlement, the injured person dies as a result of some cause other than the injury received as a result of the wrongful act or negligence of the wrongdoer, the personal representatives or heirs of that person shall be entitled to receive no more than the out-of-pocket expenses incurred by or on behalf of that injured person as the result of his injury. In either event, neither the injured person nor the personal representatives or heirs of one meeting death shall recover judgment except upon some competent satisfactory evidence other than the testimony of that injured person. Utah Code Annot. Section 78–11–12 (Supp.1977).

As appellant admits, a plaintiff's right of recovery in either a survival action or a wrongful death action is purely statutory.[4] Hence, it would seem clear that the Utah legislature was free to prescribe the measure of damages in either type of action. Perhaps somewhat awkwardly, the first sentence of section 78–11–12 as quoted

---

**2.** Record on appeal, p. 16. The exact words of the answer are "Admit, she died of cancer."

**3.** At least they seem complex and difficult questions as presented by appellant's learned and complex discussion, with tables and charts. Apparently appellant would construe the second sentence of section 78–11–12 of the Utah Code Annotated (1977 revision) as applicable only to wrongful death actions (involving post-death damages to surviving next of kin) and not to survival actions for pre-death damages suffered during decedent's lifetime, and becoming part of decedent's estate. Appellant's brief, p. 10.

Appellant also states that the 1967 amendment forbidding damages for pain and suffering was repealed by the 1977 amendment (Appellant's Brief, p. 14; see 717 F.2d at 510). Appellant cites *Kynaston v. U.S.*, 717 F.2d 506, 511 (10th Cir.1983), which holds that the 1977 amendment incorporated in section 78–11–12 does not apply retroactively. But appellant admits that the 1977 version does apply to Mrs. Lamb's 1979 injury (Appellant's brief, p. 5).

**4.** At common law the rule was *actio personalis moritur cum persona*. Appellant's brief, p. 10.

above combines both types of action in a single rule, prescribing the allowance of special and general damages in both instances.

However, the second sentence contains a qualification limiting to the injured person's out-of-pocket expenses the damages recoverable if the injured person dies (prior to judgment or settlement of the case) from a cause other than the wrongdoer's tort.

The expression "personal representatives or heirs" [of the injured person] does double duty under the unduly abbreviated language of the Utah statute.[5] Since this sentence applies only to cases involving death, it limits the "personal representatives or heirs" as statutory beneficiaries to the out-of-pocket costs. [This appellant admits][6]

But decedent's death likewise casts upon his personal representatives charged with administration of his estate the chose in action for wrongful physical injury perpetuated by the survival provision of the first sentence. And the survival action (which after decedent's death is necessarily asserted by his or her personal representatives) is likewise subjected (in certain cases) by the second sentence to the limitation of damages to out-of-pocket expenses.

As applied to survival actions, the second sentence requires a determination whether or not the death of the decedent was caused by the tortfeasor's wrong. If it was, the limitation to out-of-pocket expenses is inapplicable, and the general rule set forth in the first sentence, allowing special and general damages, would remain operative. If it was not, that limitation is applicable and reduces the recoverable damages.

Therefore, since in the case at bar (unlike *Kynaston*) it is admitted that the 1977 version of the statute applies to Mrs. Lamb's estate,[7] and it is also admitted that she died from causes unrelated to the

government's tortious conduct,[8] it follows that recovery under the survival action was properly limited by the District Court to the measure of damages prescribed by the statute in the second sentence, namely out-of-pocket expenses.

There appears to be no reason why the Utah legislature should not be free to prescribe the measure of damages recoverable, both in survival and wrongful death cases. The two types of cases are properly distinguishable, and in wrongful death actions damages may properly be measured by the loss to the specified surviving beneficiaries caused by decedent's death (loss of support, of parental guidance, and the like). In the case of an action by which the injured party recovers in his lifetime, intangible items such as pain and suffering seem just and reasonable. But where the injured party dies before judgment or settlement, the legislature may reasonably conclude that it is unwarranted and incongruous to permit creditors of decedent's estate (or even next of kin) to derive a windfall by receiving pecuniary benefit based upon the pain and suffering experienced by someone else. This is particularly true in cases where the death was caused by extraneous factors unrelated to the tortfeasor's wrongdoing.

Whatever views we may entertain as to wise public policy on these matters, it seems clear that they are issues to be resolved by the legislature of Utah, and not by federal courts. We find no impediment in the equal protection clause, or any other provision of the federal Constitution, curtailing Utah's discretion to prescribe such measure of damages as it sees fit under each set of circumstances under consideration.

Accordingly the judgment of the District Court is

AFFIRMED.

---

**5.** This does not create an "ambiguity" as appellant contends (Appellant's brief, p. 6) but rather a duplex or double coverage.

**6.** See note 3, *supra.*

**7.** See note 3, *supra.*

**8.** See note 2, *supra.*